**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER C. WHITE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **NO. 3:25-cv-00590** |
| **v.** | ) | |
| | ) | **JUDGE CAMPBELL** |
| **WENDELL RAY CROUCH, JR., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM AND ORDER

Pending before the Court is Defendant District Attorney General Wendell Ray Crouch, Jr.'s ("General Crouch") motion to dismiss (Doc. No. 49) filed under Rule 12(b)(6) and Plaintiff's response in opposition (Doc. No. 53). For the reasons stated herein, the motion is **GRANTED**.

## I. BACKGROUND[1]

In 2014, Plaintiff was the owner and operator of a business that constructed single-family resident homes with all steel exteriors commonly known as "barndominiums." (Second Amended Complaint, Doc. No. 45 ¶ 9). In late 2014, Defendant Bear-Monck sought out and contracted with Plaintiff's company for the construction of a new single-family residence located in Dickson, Tennessee (the "project"). (*See id.* ¶ 12). Work commenced on the project in early 2015. (*See id.* ¶ 16). In August 2015, Bear-Monck expressed dissatisfaction with the project and unilaterally chose to withhold the contractually required progress payments. (*Id.* ¶ 17). Plaintiff chose to cease work on the project in November 2015 due to Bear-Monck's material breaches of the contract. (*Id.* ¶ 20). On April 5, 2016, Bear-Monck filed a civil lawsuit against Plaintiff and his company in Dickson County Chancery Court. (*Id.* ¶ 25).

[1] The facts stated herein come from the second amended complaint. (Doc. No. 45).

In June 2014, Bear-Monck's son was killed in a tragic car accident involving a drunk truck driver, Daniel Maupin. (*See id.* ¶ 20). Maupin was charged with, among other things, vehicular homicide by intoxication. (*See id.* ¶ 22). Maupin's case was highly publicized in the media, and Defendant District Attorney General Wendell Ray Crouch was personally involved in that prosecution. (*See id.*). On or about February 9, 2016, Maupin was convicted of criminally negligent homicide and driving under the influence. (*Id.* ¶ 23).

On or about April 12, 2016, Maupin was sentenced to two years for criminally negligent homicide and 11 months/29 days for DUI. (*Id.* ¶ 23). Bear-Monck and General Crouch were outraged at the verdict and sentence that Maupin received. (*See id.*). Bear-Monck advised General Crouch of her complaints against Plaintiff, and General Crouch committed to using his powers to help her. (*Id.* ¶ 24). This was the genesis of the conspiracy between the Defendants to maliciously prosecute Plaintiff. (*See id.*).

On April 20, 2016, at the recommendation of General Crouch, Bear-Monck contacted the Dickson County Sheriff's Office seeking criminal prosecution of Plaintiff for the purpose of putting him in jail and extracting a refund of money she had paid for the construction of the project. (*Id.* ¶ 24). The Dickson County Sheriff's Office assigned Bear-Monck's criminal complaint case #20160420-065. (*Id.* ¶ 26). General Crouch knew that Bear-Monck had filed a civil action against Plaintiff in Dickson Chancery Court Case Number 2016-cv-115. (*Id.* ¶ 26).

Bear-Monck's criminal complaint (case #20160420-065) was assigned to Dickson County Deputy/Detective Defendant Jonathan Daniel. (*Id.* ¶ 27). On April 27, 2016, Bear-Monck met with Daniel and provided documentation related to the project (contracts, change orders, etc.) and "reports" from purported experts that had no basis in fact. (*Id.* ¶ 27). On April 29, 2016, Daniel referred Bear-Monck's criminal complaint (case #20160420-065) to the FBI. (*Id.* ¶ 28). Neither

the FBI nor the U.S. Attorney's Office in Middle Tennessee chose to prosecute Plaintiff based on Bear-Monck's purported evidence. (*Id.* ¶ 28).

Bear-Monck was extremely upset with the judicial system and General Crouch's office that the person who killed her son received such a short sentence, and she voiced her disfavor publicly. (*Id.* ¶ 29). General Crouch made the conscious decision to ameliorate Bear-Monck's anger by criminally charging Plaintiff knowing there was no legal or factual basis for doing so. (*Id.* ¶ 29). General Crouch directed Defendant Daniel and assistants in his office to fabricate criminal charges against Plaintiff solely for the purpose of extracting vindication for his failure in the *Maupin* case; he was not acting as an attorney or advocate for the State of Tennessee but rather was pursing his own personal agenda. (*Id.* ¶ 30).

On July 25, 2016, Defendant Daniel submitted a copy of the complete case file including but not limited to all known documents, video, audio, listings of evidence, reports, or statements in his possession regarding Bear-Monck's criminal complaint case#20160420-065 to General Crouch. (*Id.* ¶ 31). General Crouch reviewed the materials and knew that the materials provided by Daniel did not constitute a violation of any criminal law. (*Id.* ¶ 31).

In early August 2016, Daniel testified before the Dickson County Grand Jury alleging that Plaintiff had violated the Tennessee Home Improvement Act and committed theft of property (funds) from Bear-Monck. (*Id.* ¶ 32). At the direction of General Crouch, Daniel failed to provide the Grand Jury with the materials Bear-Monck had provided to him on April 27, 2016, except for a few pictures. (*Id.* ¶ 32). Neither the contract, change orders, or related materials were presented to the Grand Jury. (*Id.* ¶ 32). The Dickson County Grand Jury indicted Plaintiff of a violation of the Tennessee Home Improvement Contractor Act, alleging fraud of over $500,00 (Class A

felony) and theft of over $60,000 (Class B felony) (the "Indictment"). (*Id.* ¶ 38). The Indictment was the direct result of the concerted actions of Bear-Monck, Daniel, and General Crouch. (*Id.*).

Daniel worked with General Crouch in reviewing the documents and reports provided by Bear-Monck as well as her false representations regarding the project. (*Id.* ¶ 35). General Crouch knew that the materials provided failed to constitute the violation of any criminal law of the State of Tennessee. (*Id.* ¶ 35). General Crouch, with the concurrence of Daniel and Bear-Monck, agreed to pursue criminal charges against Plaintiff to: (1) punish him for his alleged conduct during the project; (2) extract money from him to pay Bear-Monck for her alleged losses; and (3) obtain relief for Bear-Monck for his failure in the *Maupin* case. (*Id.* ¶ 35). General Crouch's actions were the opposite of his duties as a prosecutor or advocate. (*Id.* ¶ 36). General Crouch knew that the law he was pursuing against Plaintiff did not apply to him. (*Id.* ¶ 36). General Crouch knew that the materials provided by Bear-Monck did not contain evidence of theft. (*Id.* ¶ 36). General Crouch knew that the dispute between Bear-Monck and Plaintiff was a civil contract action at best. (*Id.* ¶ 36). However, General Crouch chose to manipulate Daniel and the Dickson County Grand Jury into issuing an indictment with no probable cause. (*Id.* ¶ 36).

The first count of the Indictment was facially invalid because Bear-Monck's construction contract with Plaintiff was constructing a new home rather than for home improvement services. (*Id.* ¶ 39). Daniel and General Crouch recognized from their meetings with Bear-Monck that her business with Plaintiff involved the construction of new home. Count of the Indictment was also invalid as it was based on documentation (invoicing and reports) that were false. (*Id.* ¶ 39).

The second count of the Indictment was facially invalid because Bear-Monck remitted funds for the construction of her new home pursuant to said contract for labor and materials provided by Plaintiff. (*Id.* ¶ 40). The materials Bear-Monck had provided to Daniel and General

Crouch clearly established that this was a contract dispute. (*Id.* ¶ 40). Additionally, Daniel and General Crouch never verified the validity of the receipts and reports Bear-Monck had provided. (*Id.* ¶ 40).

Plaintiff was arrested in September 2016 pursuant to an arrest warrant resulting from the Indictment. (*Id.* ¶ 41). Plaintiff was incarcerated for six (6) hours until he was able to post a bail bond in the amount of $50,000 by securing the services of a bonding company that charged him $5000 to secure said bond. (*Id.* ¶ 41). For the next six years, Plaintiff was forced to defend the charges brought against him in the matter of *State of Tennessee v. Christopher C. White*, Dickson County Criminal Co. 22CC-2016-cr-371. Plaintiff incurred legal expenses and other related costs in his defense of $39,000 to defend the charges in the Indictment. (*Id.* ¶ 44).

During his criminal trial, the judge granted Plaintiff's motion to dismiss Count 1 of the Indictment because the Tennessee Home Improvement Act as it existed in 2014-2015 was not applicable and that the Court lacked subject matter jurisdiction over that Count. (*Id.* ¶ 45). Upon the conclusion of proof in the criminal trial, Plaintiff was found guilty of theft over $10,000 (a lesser included offense of Count 2 of the Indictment). (*Id.* ¶ 47). Plaintiff was later sentenced to four years or probation and required to pay restitution to Bear-Monck. (*Id.* ¶ 47). The Tennessee Court of Criminal Appeals vacated Plaintiff's conviction in June 2024 on the basis that "the undisputed facts of the case did not establish a criminal theft of services or property under Tennessee law." (*Id.* ¶ 48).

After Plaintiff was fully exonerated by the Tennessee Court of Criminal Appeals in June 2024, he made public records requests to the Dickson County Sheriff's Department and the Dickson County District Attorney's Office for all documents, videos, and email communications between Bear-Monck, Daniel, and General Crouch. (*Id.* ¶ 51). Plaintiff was advised that video

interviews of Bear-Monck had been destroyed and no email communications between the Dickson County Sheriff's Department and the Dickson County District Attorney's Office regarding Plaintiff's case were provided. (*Id.* ¶ 51).

Plaintiff brings the present lawsuit against Defendants claiming they maliciously prosecuted him and engaged in a civil conspiracy to maliciously prosecute him, in violation of state and federal law. (Second Amended Complaint, Doc. No. 45).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief can be granted. For purposes of a motion to dismiss, a court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Id.* at 678. A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Thus, dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Guzman v. U.S. Dep't of Children's Servs.*, 679 F.3d 425, 429 (6th Cir. 2012).

## III. ANALYSIS

General Crouch argues he should be dismissed from this lawsuit under absolute prosecutorial immunity. Officials seeking the protection of absolute immunity bear the burden of showing that absolute immunity is justified. *See Jackson v. City of Cleveland*, 64 F.4th 736, 743

(6th Cir. 2023). "Absolute immunity is a narrow, but powerful, protection given to prosecutors when they act as advocates participating in or preparing for a judicial proceeding." *Smith v. Wayne Cnty., Michigan*, 147 F.4th 613, 619 (6th Cir. 2025); *Jackson*, 64 F.4th at 743 ("Prosecutors receive absolute immunity from suit for conduct in initiating and pursuing criminal prosecutions."). Indeed, the Sixth Circuit has recognized that absolute prosecutorial immunity has a "long reach" and "extends even to 'unquestionably illegal or improper conduct,' including instances where a defendant is genuinely wronged." *Price v. Montgomery Cnty*., 72 F.4th 711, 719 (6th Cir. 2023) (quoting *Cady v. Arenac County*, 574 F.3d 334, 340 (6th Cir. 2009)).

When determining whether prosecutor's actions should be shielded by absolute immunity, courts apply a functional approach that looks to nature of function performed, not the identity of the actor who performed it. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993); *Smith v. Wayne Cnty., Michigan*, 147 F.4th 613, 621 (6th Cir. 2025) ("The focus should always be on the function the prosecutor is performing."). "The analytical key to prosecutorial immunity ... is *advocacy*—whether the actions in question are those of an advocate." *Smith*, 147 F.4th at 619 (citation omitted) (emphasis in original). Because "advocacy does not start at the courtroom door," various preparatory activities outside the courtroom, such as the professional evaluation of evidence assembled by police and appropriate preparation for its presentation at trial, are also entitled to the protections of absolute immunity. *Id.* at 620-21.

On the other hand, "when a prosecutor performs administrative or investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings, they are not entitled to absolute immunity." *Jackson*, 64 F.4th at 743 (citation modified). Examples of functions that are administrative or investigative in nature, and thus not entitled to absolute prosecutorial immunity, include giving legal advice to police, making out-of-

court statements at press conference, making statements in affidavit supporting application for arrest warrant, and authorizing warrantless wiretaps in interest of national security. *See id*. at 744.

"The dividing line is not ... the point of determination of probable cause. Instead, the dividing line is the point at which the prosecutor performs functions that are intimately associated with the judicial phase of the criminal process." *Howell v. Sanders*, 668 F.3d 344, 350 (6th Cir. 2012) (quoting *Prince v. Hicks*, 198 F.3d 607, 614 (6th Cir. 1999)). "A prosecutor's decision to initiate a prosecution, including the decision to file a criminal complaint or seek an arrest warrant, is protected by absolute immunity." *Howell*, 668 F.3d at 351. "Also, a prosecutor may bring and litigate charges with absolute immunity, even if the prosecutor acts with malice and without probable cause." *Id*. at 354. Therefore, General Crouch is entitled to prosecutorial immunity for his alleged actions of bringing and litigating the charges against Plaintiff with actual malice and without probable cause.

According to the second amended complaint, "General Crouch is being sued solely for his role in the investigation of the alleged wrongdoing against Plaintiff in conjunction with his actions and influence of Defendant Daniel, and others within his office over whom he had direct supervision and control." (Second Amended Complaint, Doc. No. 45 ¶ 54). General Crouch's alleged actions and influence of Defendant Daniel included directing him "to fabricate criminal charges against Plaintiff solely for the purpose of extracting vindication for his failure in the *Maupin* case" and reviewing Daniel's criminal case file on Bear-Monck's complaint which he allegedly knew did not constitute a violation of any crime. (*See id.* ¶¶ 30-31, 35). Through his pending motion, General Crouch argues his foregoing alleged actions in the second amended complaint all pertain to his decision to bring criminal charges despite allegedly lacking probable cause, which fit squarely in his advocacy functions as a prosecutor. (*See* Doc. No. 50 at 7-9).

In his response, Plaintiff reiterates the allegations that General Crouch conspired with his co-defendants to fabricate charges against Plaintiff to extract money from him and punish him with jail time; that General Crouch had a history of misusing the criminal justice system for that purpose; and that General Crouch directed Defendant Daniel and reviewed the evidence supplied by him and Bear-Monck that General Crouch knew was false. (*See* Doc. No. 53 at 12 ("[General Crouch] does not get a free pass based on prosecutorial immunity when he is the person most responsible for initiating the criminal investigation of the Plaintiff.")). However, prosecutorial immunity applies to an advocate's preparation for the initiation of a prosecution; as the Sixth Circuit has held that "absolute immunity extends to a prosecutor's conduct in initiating a prosecution and in presenting the government's case as well as the administrative or investigative acts necessary for a prosecutor to initiate or maintain the criminal prosecution." *Cooperrider v. Woods*, 127 F.4th 1019, 1028 (6th Cir. 2025) (quoting *Rieves v. Town of Smyrna*, 959 F.3d 678, 691 (6th Cir. 2020)) (citation modified). Accordingly, the Court finds that General Crouch has met his burden of showing that absolute immunity is justified. *Jackson v. City of Cleveland*, 64 F.4th 736, 743 (6th Cir. 2023).

## IV. CONCLUSION

For the reasons stated herein, General Crouch's motion to dismiss (Doc. No. 49) is **GRANTED** on absolute prosecutorial immunity grounds.

It is so **ORDERED**.

WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE